UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES JOSEPH PRINCE, | ) | Case No. 3:13CV1051 |
| | ) | |
| Petitioner, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| BRIAN COOK, WARDEN[1], | ) | **Report and Recommendation** |
| | ) | **of Magistrate Judge** |
| Respondent. | ) | |
| | ) | |

On May 3, 2013[2], Petitioner James Joseph Prince ("Petitioner"), acting *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  ECF Dkt. #1.  Petitioner seeks relief for alleged constitutional violations that occurred in the Auglaize County, Ohio Court of Common Pleas, following Petitioner's entry of a guilty plea to one count of possession of heroin in violation of Ohio Revised Code ("ORC") §2925.11(A)(C)(6)(a), a felony of the fifth degree and one count of illegal conveyance of drugs in violation of ORC §2921.36(A)(2), a felony of the third degree. On July  22, 2013, Respondent Brian Cook, Warden of Pickaway Correctional Institution filed the return of writ. ECF Dkt. #9.  The traverse was filed on August 16, 2013.  ECF Dkt. #11.

On November 5, 2013, Petitioner filed a motion/request for discovery, specifically results of drug field test, or Petitioner consent to such field test. ECF Dkt. #12.  Respondent filed an opposition brief on November 19, 2013.  ECF Dkt. #13.  Petitioner filed a reply brief on December 2, 2013.  ECF Dkt. #14.  On April 15, 2014, Petitioner filed a motion to enforce Habeas Rule 23. ECF Dkt. #15. On April 22, 2014, Respondent filed an opposition brief to the motion to enforce habeas Rule 23. ECF Dkt. #16.  On April 23, 2013, the undersigned issued an Order denying Petitioner's motion to enforce the habeas rule.  ECF Dkt. #17.

---

[1]Petitioner is housed at Pickaway Correctional Institution, where Brian Cook is the warden.  See www.drc.ohio.gov "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . ." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Accordingly, the Petition should be amended to name Brian Cook as respondent.

[2]The filing date for a petition from an incarcerated *pro se* petitioner is the date the petition was handed over to the prison mail system, not the date it was received and docketed by the federal habeas court. *Houston v. Lack*, 487 U.S. 266, 270-72, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

For the following reasons, the undersigned recommends that the Court DISMISS the instant petition in its entirety with prejudice, and DENY Petitioner's motion/request for discovery, specifically results of drug field test, or Petitioner consent to such field test as MOOT:

## I.    **SYNOPSIS OF THE FACTS**

The Third District Court of Appeals of Ohio set forth the relevant facts on direct appeal. *State v. Prince*, 2012 WL 3893768 (3rd Dist.). These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999):

{¶ 2} On October 4, 2011, the Ohio State Highway Patrol responded to a report that individuals were using drugs inside a vehicle parked at a rest area along I-75 in Auglaize County. Upon searching the vehicle, the officers located heroin, a syringe, and a cup of water that had been used to clean the syringe. Prince admitted that these items belonged to him. Prince was placed under arrest and taken to the Auglaize County Correctional Center.

{¶ 3} On October 6, 2011, the Auglaize County Grand Jury indicted Prince on one count of possession of heroin in violation of R.C. 2925.11(A)(C)(6)(a), a felony of the fifth degree, and one count of possession of drug abuse instruments in violation of R.C. 2925.12(A), a misdemeanor of the second degree. On the same date, Prince's cell at the correctional center was searched based on information provided by other inmates that Prince had drugs in his cell. During this search, officers located a baggie containing heroin.

{¶ 4} Counsel was appointed for Prince, and on October 12, 2011, he entered not guilty pleas to the two counts in the indictment. Prince himself filed several hand-written motions with the trial court while he was incarcerated. These motions were denied and Prince was instructed that all motions should be filed by counsel as the court did not allow "hybrid representation," i.e., Prince representing himself in addition to an attorney. (10/19/11 J .E.)

{¶ 5} The final pre-trial hearing was set for November 23, 2011, with a jury trial scheduled for December 12, 2011. (10/28/11 J.E.) Prince's counsel filed a motion to suppress and a hearing on that motion was set for that on November 28, 2011. On the date set for the pre-trial, the State filed a Bill of Information pursuant to Crim.R. 7, charging Prince with one count of illegal conveyance of drugs into a correction facility in violation of R.C. 2921.36(A)(2), a felony of the third degree, pertaining to the drugs found in his jail cell.

{¶ 6} On November 23, 2011, instead of a pre-trial hearing, the trial court was informed that Prince had accepted a plea agreement and wished to change his plea. Pursuant to the terms of that agreement, Prince would plead guilty to Count I in the indictment, the fifth degree felony, with a maximum sentence of twelve months in prison, and the State would enter a nolle prosequi as to Count II, the misdemeanor. Prince also would waive prosecution by Indictment and agree to be prosecuted by the Information for the charge of illegal conveyance of drugs, which, "pursuant to

-2-

the statute, there's a thirty-six months maximum prison term for that offense * * *." (11/23/11 Change of Plea Hrg. Tr. 4) Prince would also agree to withdraw his motion to suppress. (Id.) The agreement was reduced to writing and signed by the prosecutor, Prince, and his attorney. (Id.)

{¶ 7} The trial court conducted a full and detailed Crim.R. 11 plea colloquy before accepting Prince's pleas and finding him guilty. The trial court questioned Prince in detail to determine whether he understood everything that he was agreeing to, whether he could read and write, if he was satisfied that he knew what the charges were about, whether he was under the influence of drugs, alcohol, medication, or in withdrawal, whether he was in any pain that prevented him from thinking clearly, whether he knew what he was doing, and whether he was changing his plea and waiving indictment freely and voluntarily of his own free will. (Id. 6-12)

{¶ 8} The trial court further asked Prince, "Do you want me to read and explain to you any further the Bill of Information, the law, and the penalties?" (Id. 8) Prince answered, "No, Your Honor." At this point, Prince's attorney interjected and informed the trial court on the record that he had recommended that Prince wait at least an additional five days, until the date of the suppression hearing, before making his final decision, in order to allow enough time to review the discovery that the State had just provided, and to further discuss the Bill of Information and the plea agreement with his client. (Id. 8-9)

{¶ 9} However, Prince indicated that he was satisfied that he knew what the charges were about and satisfied that he wanted to go forward. (Id. 9)

> THE COURT: You do understand you've got additional time if you want more time to think about it?
>
> PRINCE: Yes, Your Honor.
>
> THE COURT: You want to go forward today and do this?
>
> PRINCE: Yes, Your Honor.
>
> THE COURT: And you are doing that freely and voluntarily of your own free will?
>
> PRINCE: Yes, Your Honor.

( Id.) The trial court also questioned Prince about his willingness to waive indictment and be prosecuted by the Bill of Information, and further explained the potential penalties involved. (Id. 11–14)

{¶ 10} Prince then entered pleas of guilty to the two counts specified in the plea agreement. (Id. 15) Before the trial court would accept the pleas, it explained in detail all of the rights that Prince was giving up by entering his pleas rather than going to trial. Prince acknowledged that he understood and agreed to waive each and every right read to him by the trial court. The trial court then accepted Prince's guilty pleas. It ordered a presentence investigation report and continued the matter for sentencing.

{¶ 11} On December 8, 2011, prior to sentencing, Prince filed a pro se motion seeking to withdraw his guilty plea pursuant to Crim.R. 32. 1, claiming that he was not in his right state of mind when he entered his plea, claiming he was

-3-

psychologically disabled and did not understand the matters in the plea agreement. (12/8/11 Motion, # 55). He also claims he was denied effective counsel because neither his attorney, nor the trial court, nor the jail personnel had done anything to obtain medications for him. (Id.) FN1

FN1. Prince's attorney also filed a "Motion in Support of Defendant's Ex Parte Request to Withdraw Plea" on December 9, 2011. (12/9/11 Mtn. # 56) On December 12, 2011, another copy of Prince's Motion to Withdraw his Plea, dated December 4, 2011, was filed with the notation that it had been found after the fact and had inadvertently not been docketed." (12/12/11 Mtn. # 57).

{¶ 12} On December 16, 2011, the trial court held a hearing on Prince's motion to withdraw his plea and on the other matters he had raised. First, the trial court informed Prince that it had no medical training or authority, but that it had made sure that the jail administration was aware of his medical complaints. Prince had written multiple letters to the trial court and jail personnel claiming that he was bi-polar and suffered from manic depression, and that he was not receiving any medication for these conditions in jail. The trial court reviewed Prince's medical communications (Exhibits A and C[3]) and noted that the nurse had responded that the doctor could not prescribe medication for his claimed bi-polar condition when they "have no medical confirmation." The communications from the registered nurse stated that "I have asked for additional information in regards to your mental health condition and, to date, have received no additional documentation." (Ex. A, "kite" dated 10/24/11) In another communication, the nurse noted that "the doctor has reviewed all the medical information and we are not placing you on any medication." (Ex. A, "kite" dated 11/3/11) The information the jail's medical personnel had received from one of the contacts provided by Prince did not indicate that he had been on any long-term medication program. (Ex. A, Memo dated 10/24/11; 12/16/11 Hrg. Tr. 11-12)

{¶ 13} The trial court then addressed Prince's request to obtain new counsel. After hearing the testimony of the parties, the trial court did not find any merit to Prince's claims that counsel's representation was deficient and denied the motion to disqualify counsel. (12/16/11 Hrg. Tr. 19)

{¶ 14} And finally, the trial court heard Prince's testimony concerning his reasons for wanting to withdraw his pleas. (Id. at 20-39) Prince claimed that he was not in his right mind when he made the pleas, due to lack of medication for his bi-polar, manic depression, and anxiety conditions. He also claimed that he had believed that the maximum penalty for the third degree felony was five years, and that he was gaining a benefit by pleading guilty and getting a three year sentence. (Id. at 37-39) He had since learned that the law had recently been changed, as a result of H.B. 86, and the maximum penalty had been reduced to three years. Therefore, he felt he was not gaining any benefit from the plea deal. (Id. at 39; 43)

{¶ 15} The State opposed allowing the withdrawal of his guilty pleas claiming that Prince's multiple pro se motions and communications with the trial court and jail personnel exhibited that he was of clear mind and fully understood the law and his rights. ( Id. at 39) The State further pointed out that Prince had been correctly informed of the maximum penalties according to law, both at the change of plea hearing and on the plea agreement forms. The State represented that Prince's desire

---

[3]Legible copies of the exhibits referred to in the Third District's opinion can be found at in the record before the Court at ECF Dkt. #9-1, pp. 114-118.

to change his plea "seems to be more of akin to buyer's remorse than one of true confusion as to what happened at the plea change." (Id. at 40)

*Id.* at *1-3.

## II.  **PROCEDURAL HISTORY**

### A.  **State Trial Court**

Petitioner was indicted by the September 2011 Term of the Auglaize County Grand jury for one count of possession of heroin in violation of ORC §2925.11(A)(C)(6)(a), a felony of the fifth degree (Count One), and one count of possession of drug instruments in violation of ORC § 2925.12(A), a misdemeanor of the second degree (Count Two).  ECF Dkt. #9-1, pp. 1-2.

Petitioner entered a plea of not guilty.  On November 16, 2011, Petitioner, through counsel, filed a motion to suppress.  ECF Dkt. #9-1, p. 10- 22.  On November 23, 2011, a Bill of Information was filed charging Petitioner with illegal conveyance of drugs onto property of state facilities in violation of ORC 2921.36(A)(2), a felony of the third degree.  That same day, at a final pre-trial hearing, Petitioner entered a guilt plea to Count One of the Indictment, and waived prosecution by indictment and plead guilty to the sole count in the Information.  He also withdrew his motion to suppress, which was scheduled for a hearing on the following Monday. In exchange, the state agreed to nolle Count Two of the Indictment.

At the plea change hearing, Petitioner was informed of the maximum penalty for each crime: twelve months for possession of heroin, and thirty-six months for illegal conveyance. The following colloquy took place at the plea hearing:

> THE COURT: And these could be run consecutively so you're looking at a total of up to forty-eight (48) months in prison plus Post Release Control and the ramifications if you violate Post Release Control, as I've indicated. Do you understand?
>
> Petitioner: Yes, your honor.

ECF Dkt. #9-3, p. 17. The state also provided Petitioner with the opportunity to consider entering his plea days later at the then scheduled suppression hearing, in order that he might consider roughly fifty pages of discovery produced that day on the charge in the Information.  *Id.* at pp. 8-9. Similarly, the court explained that Petitioner had a right to a twenty-four hour waiting period

following the issuance of the Bill of Information. *Id.* at p. 13.  Nonetheless, Petitioner entered his guilty plea. See also ECF Dkt. #9-1, p. 30.

During the plea hearing, the court specifically asked if Petitioner was taking any medication. ECF Dkt. #9-3,  p. 10. Petitioner stated that he was prescribed pain medication, but 'the county jail [would not] give it to him." *Id.*  Petitioner stated, "I was supposed to have a surgery – was supposed to have my tibia fused but besides that I guess I'm alright."  *Id.*  Petitioner described constant pain, but when the court asked if the pain interfered with his ability to think clearly, Petitioner replied, "No." *Id.*

On December 8, 2011, Petitioner filed a *pro se* motion to withdraw his guilty plea. He claimed that he was mentally disabled and had asked for "psychotropic medication" while in jail and did not receive it, and he claimed that counsel was ineffective for allowing him to plead guilty. ECF Dkt. #9-1 at 33. Petitioner's counsel filed a motion in support of the motion to withdraw plea, which essentially restated the allegations in Petitioner's *pro se* motion. *Id.* at 34-37.

At the hearing on the motion, Petitioner attested that he wanted to nullify his plea and proceed to trial on all charges due to his mental health problems, as well as the fact that he had misunderstood, based upon his own research at the jail, that the charge in the Information carried a five-year maximum sentence rather than a three-year maximum sentence. He also raised the issue of his own competency to stand trial and sought the opportunity to enter a plea of not guilty by reason of insanity. After a hearing, the court denied the motion to withdraw plea. The court opined that Petitioner had simply changed his mind and that he had been fully advised of all his rights, and had entered the plea knowingly and voluntarily. *Id.* at 38.

On January 13, 2012, the court sentenced Petitioner to twelve months in prison for possession of heroin and thirty-six months for illegal conveyance of drugs, both sentences to be served consecutively, for a total of forty-eight months. *Id.* at 39-41.

## B.      Direct Appeal

On February 27, 2012, Petitioner, through new counsel, filed a motion for leave to file a delayed appeal of his conviction and sentence with the Third District Court of Appeals.  The Third District granted the motion and Petitioner raised the following assignment of error:

1. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED MR. PRINCE'S DECEMBER 8, 2011 MOTION TO WITHDRAW HIS GUILTY PLEA. (JANUARY 9, 2012 ENTRY).

ECF Dkt. #9-1, p. 72. On September 10, 2012, the Court of Appeals affirmed the trial court's judgment. *State v. Prince*, 2012 WL 3893768 (3rd Dist.); ECF Dkt. #9-1, pp. 125-140.

**C.**    **Supreme Court of Ohio**

On October 22, 2012, Petitioner filed a *pro se* notice of appeal in the Supreme Court of Ohio. ECF Dkt. #9-1, p. 142. In his memorandum in support of jurisdiction, Petitioner set forth the following propositions of law:

I. DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF APPEAL COUNSEL ON DIRECT APPEAL CONTRARY TO *STRICKLAND V. WASHINGTON* (1984),466 US.668; 104 S.CT 2052; 80 L.ED 2D 674; 1984 U.S.LEXIS 79; 52 U.S.L.W.4565; WHEN COUNSEL FAILED TO DO THE FOLLOWING:

#1) RAISE ASSIGNMENT OF ERROR OF "INCOMPETENCE CLAIM," BASED ON "AMERICAN DISABILITY ACT OF 1990 (A.D.A.) 11; *PATE V. ROBINSON* (1966), 383 U.S.375; 15 L.ED 2D 815; 86 S.CT 836; *DROPE V. MISSOURI* (1975), 420 U.S.162; 43 L.ED 2D 103; 95 S.CT 896

#2) RAISE ASSIGNMENT OF ERROR OF "ALLIED OFFENSE CLAIM," BASED ON R.C.2941.25(A); *PEOPLE V. JOHNSON* (2010), 128 OHIO ST 3D 153; 2010 OHIO 6310; 942 N.E.2D 1061

ECF Dkt. #9-1, p. 142. On July 24, 2013, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). ECF Dkt. #9-1, p. 191.

**D.**    **Application for Re-opening of Direct Appeal**

On November 29, 2012, during the pendency of his appeal before the Ohio Supreme Court, Petitioner filed a *pro se* application to reopen his direct appeal ("*Murnahan* application") pursuant to Ohio Appellate Rule 26(B) in the Third District Court of Appeals. In his *Murnahan* application, Petitioner argued that appellate counsel was ineffective for failing to assert the following assignments of error on direct appeal:

I. Defendant-Appellant was denied effective assistance of appeal counsel on direct appeal contrary to *Strickland v. Washington* (1984), 466 US.668; 104 S.Ct 2052; 80 L.Ed 2d 674; 1984 U.S.LEXIS 79; 52 U.S.L.W.4565; when counsel failed to do the following:

1) Raise Assignment of Error of "Incompetency Claim," based on "American Disability Act of 1990 (A.D.A.) 11; *Pate v. Robinson* (1966), 383 U.S.375; 15 L.Ed

-7-

2d 815; 86 S.Ct 836; *Drope v. Missouri*(1975), 420 U.S.162; 43 L.Ed 2d 103; 95 S.Ct 896

2) Raise Assignment of Error of "Allied Offense Claim," based on R.C.2941.25(A); *People v. Johnson* (2010),128 Ohio St 3d 153; 2010 Ohio 6310; 942 N.E.2d 1061

3) Raise assignment of error of "Brady Violation," in accordance to *Brady v. Maryland* (1963), 373 U.S.83; 10 L.Ed 2d 215; 83 S.Ct 1194, Civil Rule 34(D)(1), and App.R.9(E).

ECF Dkt. #9-1, p. 192-194.

On December 30, 2012, the Third District Court of Appeals issued a judgment denying Petitioner's application for re-opening as Petitioner had failed to include sworn statements, parts of the record or affidavits, and failed to submit evidence in support of his application. ECF Dkt. #9-1, pp. 195-196. Petitioner did not appeal the decision to the Ohio Supreme Court.

## III. **28 U.S.C. § 2254 PETITION**

The instant *pro se* petition was filed May 3, 2013. Petitioner presents the following grounds for relief:

**GROUND ONE**: DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF APPEAL COUNSEL ON DIRECT APPEAL CONTRARY TO *STRICKLAND V. WASHINGTON* (1984), 466 U.S.668; 104 S.CT 2052; 80 L.ED 2D 674; WHEN COUNSEL FAILED TO DO THE FOLLOWING;

#1) RAISE ASSIGNMENT OF ERROR OF "INCOMPETENCE CLAIM," BASED ON" AMERICAN DISABILITY ACT OF 1990 (A.D.A) *PATE V. ROBINSON* (1966), 383 U.S.375; 15 L.ED 815; 86 S.CT 836: *DROPE V. MISSOURI* (1975) 420 U.S.162; 43 L.ED 2D 103; 95 S.CT 896.

#2) RAISE ASSIGNMENT OF ERROR OF "ALLIED OFFENSE" & OR THE "DOUBLE JEOPARDY" CLAIM, BASED ON R.C.2941.25(A): UNITED STATES CONSTITUTION FIFTH AMENDMENT, CITING *BLOCKBURGER V. UNITED STATES* (1932), 284 U.S.299; 52 S.CT 180; 76 L.ED 306

#3) RAISE ASSIGNMENT OF ERROR OF "SUPPRESSION OF EXCULPATORY EVIDENCE", I.E., *BRADY* VIOLATION, BASED ON *BRADY V. MARYLAND* (1963), 373 U.S. 83; 10 L.ED 2D 215; 83 S.CT 1194.

DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF APPEAL COUNSEL ON DIRECT APPEAL CONTRARY TO *STRICKLAND V. WASHINGTON* (L984) 466 U.S.668, 104 S.CT 2052, 80 L.ED 2D 674.

**GROUND TWO**: RAISE ASSIGNMENT OF ERROR OF "INCOMPETENCE CLAIM," BASED ON "AMERICAN DISABILITY ACT OF 1990 (A.D.A.) *PATE V. ROBINSON* (1966), 383 U.S.375; 15 L.ED 815; 86 S.CT 836: *DROPE V. MISSOURI* (1975) 420 U.S.162; 43 L.ED 2D 103; 95 S.CT 896.

SUPPORTING FACTS: IN PARAGRAPH ¶27 OF THE COURT OF APPEALS JUDGMENT ENTERED ON 9-10-2012, APPEALS COURT ADJUDICATED …"NO EVIDENCE TO SUPPORT PRINCE'S CLAIM" …THE LEGAL CLAIM COURT WAS REFERRING TO, WAS THE "INCOMPETENCY CLAIM," THAT APPEAL COUNSEL FAILED TO RAISE & OR EXPAND THE RECORD AS TO SUCH CLAIM, REGARDLESS, AT PRE-TRIAL HEARING DATED 11-23-2011, PETITIONER TESTIFIED UNDER OATH OF THE FOLLOWING FACTS:

#1) PETITIONER WAS MENTALLY DISABLED PURSUANT TO A.D.A. STATUTE, AND WAS CERTIFIED AS SUCH IN THREE STATES (MICHIGAN, NEW MEXICO, & COLORADO) & THE FEDERAL GOVERNMENT;

#2) THAT PRIOR TO PLEADING GUILTY TO SAID CHARGES, PETITIONER SEEFED [SIC] MENTAL HEALTH TREATMENT FROM AUGLAIZE COUNTY JAIL MEDICAL DEPARTMENT FOR "MANIC DEPRESSION," "BI POLAR" DISORDERS, ETC. IN WHICH WAS TO NO AVAIL

#3) PETITIONER COURT APPOINTED TRIAL COUNSEL WAS AWARE OF PETITIONER ILLNESS & FAILED TO RAISE & FIGHT SUCH DEFENSE, AS WELL AS APPELLATE COUNSEL FAILED TO RAISE SUCH, AS WELL AS INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL;

#4) PETITIONER DID NOT RECEIVE NOR WAIVE A "COMPETENCY HEARING."

**GROUND THREE**: RAISE ASSIGNMENT OF ERROR OF "ALLIED OFFENSE" & OR THE "DOUBLE JEOPARDY" CLAIM, BASED ON R.C.2941.25(A): UNITED STATES CONSTITUTION FIFTH AMENDMENT, CITING *BLOCKBURGER V. UNITED STATES* (1932), 284 U.S.299; 52 S.CT 180; 76 L.ED 306

SUPPORTING FACTS: PETITIONER WAS CONVICTED OF MULTIPLE OFFENSES "ILLEGAL CONVEYANCE OF DRUGS INTO A CORRECTIONAL FACILITY & POSSESSION OF CONTROLLED SUBSTANCE," IN WHICH BOTH CRIMINAL OFFENSES STEM FROM THE SAME CRIMINAL TRANSACTION, OR OTHERWISE CALLED "MODUS OPERANDI" I.E. BEING AN ADDICT, THEN BY THE SAME TOKEN, PETITIONER WAS NOT PUNISHED TWICE, BUT THREE TIMES;

#1) 3 YRS. FOR ILLEGAL CONVEYANCE,

#2) 1 YR. FOR POSSESSION

#3) FOR #1 & #2) TO RUN CONSECUTIVELY TO EACH OTHER, TOTAL OF 4 YRS.

IT IS ALSO A FACT, THAT POSSESSION OF CONTROLLED SUBSTANCE IS A LESSER INCLUDED OFFENSE, OR ELEMENT, OF MAIN CHARGE OF ILLEGAL CONVEYANCE. FINAL FACT IS, UPON ENTERING OR THROUGHOUT THE STAY AT AUGLAIZE COUNTY JAIL, WAS THE PETITIONER LEGALLY "NOTIFIED" THAT POSSESSION OF A CONTROLLED SUBSTANCE & ENTERING SUCH FACILITY WAS A CRIMINAL OFFENSE, PLEASE SEE BOOKING FILE.

**GROUND FOUR**: RAISE ASSIGNMENT OF ERROR OF "SUPPRESSION OF EXCULPATORY EVIDENCE", I.E., BRADY VIOLATION, BASED ON *BRADY V. MARYLAND* (1963), 373 U.S.83; 10 L.ED 2D 215; 83 S.CT 1194.

SUPPORTING FACTS: ON 10-4-2011 OHIO STATE HIGHWAY PATROL SGT. FRANK F. SIMMONS, JR, CONDUCTED A "FIELD DRUG TEST," IN WHICH PURSUANT TO R.C.4511.19, IT IS A PROCEDURAL & SUBSTANTIVE RIGHT OF CRIMINAL DEFENDANT TO HAVE THE ARRESTING OFFICER TO INCLUDE ALL THE FACTS, INCLUDING FIELD DRUG TEST RESULTS IN THE "SWORN REPORT." BUT BECAUSE RESULTS WERE PRESUMED BY DEFENDANT AS NEGATIVE, AND IS WHY SGT SIMMONS JR. FAILED TO INCLUDE NEGATIVE RESULTS IN SWORN REPORT, BUT ALSO ACTED IN BAD FAITH BY WAY OF, IN A PRETEXT TO AN ILLEGAL ARREST & ILLEGALLY SEIZED PROPERTY OF DEFENDANT CONTRARY TO UNITED STATES CONSTITUTION FOURTH AMENDMENT, BECAUSE PRIOR TO PRE-TRIAL & MOTION TO SUPPRESS EVIDENCE, DEFENSE COUNSEL SUBMITTED A DISCOVERY MOTION, TO NO AVAIL, THEN AT PRE TRIAL ON 11-23-2011 DEFENDANT WAIVED HIS MOTION TO SUPPRESS & OTHER AGREEMENTS, FOR A GUILTY PLEA, NOT KNOWING THAT PROSECUTION WITHHELD THIS EXCULPATORY EVIDENCE. THEN ON 2-24-2012 DEFENDANT APPELLANT IN PROPRIA PERSONA FILED A MOTION FOR EXCULPATORY EVIDENCE, SPECIFICALLY FOR THE "FIELD DRUG TEST" ALL STATE COURTS IGNORED DEFENDANT IN PROPRIA PERSONA PLEADINGS REQUESTING THIS EXCULPATORY EVIDENCE. REGARDLESS BOTH ARRESTING OFFICER & PROSECUTION ACTED IN BAD FAITH, OFFICER BY WAY OF NO POSITIVE FIELD TEST FOR ARREST, ETC. …. PROSECUTION BY WAY AT PLEA NEGOTIATION, IN WHERE IF THE DEFENDANT KNEW THIS EVIDENCE (FIELD DRUG TEST WAS NEGATIVE) WOULD OF BOLSTERED DEFENDANT MOTION TO SUPPRESS, ILLEGAL SEARCH & SEIZURE CLAIM.

ECF Dkt. #1.

## IV.    **PROCEDURAL BARRIERS TO REVIEW**

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993). However, the Supreme Court has also held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was

plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. §2244(d)(1). The AEDPA statute of limitations is not at issue in this case.

### B. Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907

(1993)(quotation omitted). In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id*. at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1) whether the petitioner failed to comply with an applicable state procedural rule;

(2) whether the state courts actually enforced the state procedural sanction;

(3) whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

-13-

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

> Simply stated, a federal court may review federal claims that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (*i.e.*, exhausted) or because they were not properly presented to the state courts (*i.e.*, were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## V.     STANDARD OF REVIEW

The undersigned further recommends that the Court find that the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 3, 2013, well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas corpus. The AEDPA provides:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Further, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

  The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A. Decisions of lower federal courts may not be considered.

B. Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C. The state court decision may be overturned only if:

  1. It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

  2. the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3. 'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4. the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D. Throughout this analysis the federal court may not merely apply its own views of what the law should be.  Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E. Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672,

-16-

676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

> The United States Supreme Court has observed:

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 786-787 (2011).

## VI.  **ANALYSIS**

Respondent contends that all of the grounds advanced by Petitioner are procedurally barred. Respondent asserts that Petitioner failed to fairly present the arguments advanced in the petition to the state courts in his direct appeal. With respect to Petitioner's *Murnahan* application, Respondent argues that Petitioner did not appeal the decision of the Third District Court of Appeals to the Ohio Supreme Court.

First, it is important to note that Petitioner articulates constitutional challenges to three issues: first, the failure of his trial counsel and appellate counsel to assert that his untreated mental illness rendered him incapable of providing a knowing, intelligent, and voluntary plea of guilty to the charges in the Indictment and the Information; second, the failure of his trial counsel and appellate counsel to assert a challenge based upon the "allied offense" doctrine pursuant to established Ohio law at sentencing; and, third, the failure of his trial counsel and appellate counsel to allege that the state suppressed exculpatory evidence in violation of law announced in *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner's challenges predicated upon the alleged ineffective assistance of appellate counsel are set forth is Ground One, while his challenges predicated upon the alleged ineffective assistance of trial counsel are set forth individually in Grounds Two through Four. Because Respondent correctly argues that Petitioner's ineffective assistance of trial counsel claims set forth in Ground Two through Four are procedurally defaulted, the undersigned will address Petitioner's claims out of order for ease of analysis.

**A.     Grounds Two through Four**

**GROUND TWO**: RAISE ASSIGNMENT OF ERROR OF "INCOMPETENCE CLAIM," BASED ON "AMERICAN DISABILITY ACT OF 1990 (A.D.A.) *PATE V. ROBINSON* (1966), 383 U.S.375; 15 L.ED 815; 86 S.CT 836: *DROPE V. MISSOURI* (1975) 420 U.S.162; 43 L.ED 2D 103; 95 S.CT 896.

SUPPORTING FACTS: IN PARAGRAPH ¶27 OF THE COURT OF APPEALS JUDGMENT ENTERED ON 9-10-2012, APPEALS COURT ADJUDICATED …"NO EVIDENCE TO SUPPORT PRINCE'S CLAIM" …THE LEGAL CLAIM COURT WAS REFERRING TO, WAS THE "INCOMPETENCY CLAIM," THAT APPEAL COUNSEL FAILED TO RAISE & OR EXPAND THE RECORD AS TO SUCH CLAIM, REGARDLESS, AT PRE-TRIAL HEARING DATED 11-23-2011, PETITIONER TESTIFIED UNDER OATH OF THE FOLLOWING FACTS:

#1) PETITIONER WAS MENTALLY DISABLED PURSUANT TO A.D.A. STATUTE, AND WAS CERTIFIED AS SUCH IN THREE STATES (MICHIGAN, NEW MEXICO, & COLORADO) & THE FEDERAL GOVERNMENT;

#2) THAT PRIOR TO PLEADING GUILTY TO SAID CHARGES, PETITIONER SEEFED [SIC] MENTAL HEALTH TREATMENT FROM AUGLAIZE COUNTY JAIL MEDICAL DEPARTMENT FOR "MANIC DEPRESSION," "BI POLAR" DISORDERS, ETC. IN WHICH WAS TO NO AVAIL

#3) PETITIONER COURT APPOINTED TRIAL COUNSEL WAS AWARE OF PETITIONER ILLNESS & FAILED TO RAISE & FIGHT SUCH DEFENSE, AS WELL AS APPELLATE COUNSEL FAILED TO RAISE SUCH, AS WELL AS INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL;

#4) PETITIONER DID NOT RECEIVE NOR WAIVE A "COMPETENCY HEARING."

**GROUND THREE**: RAISE ASSIGNMENT OF ERROR OF "ALLIED OFFENSE" & OR THE "DOUBLE JEOPARDY" CLAIM, BASED ON R.C.2941.25(A): UNITED STATES CONSTITUTION FIFTH AMENDMENT, CITING *BLOCKBURGER V. UNITED STATES*(1932), 284 U.S.299; 52 S.CT 180; 76 L.ED 306

SUPPORTING FACTS: PETITIONER WAS CONVICTED OF MULTIPLE OFFENSES "ILLEGAL CONVEYANCE OF DRUGS INTO A CORRECTIONAL FACILITY & POSSESSION OF CONTROLLED SUBSTANCE," IN WHICH BOTH CRIMINAL OFFENSES STEM FROM THE SAME CRIMINAL TRANSACTION, OR OTHERWISE CALLED "MODUS OPERANDI" I.E. BEING AN ADDICT, THEN BY THE SAME TOKEN, PETITIONER WAS NOT PUNISHED TWICE, BUT THREE TIMES;

#1) 3 YRS. FOR ILLEGAL CONVEYANCE,

#2) 1 YR. FOR POSSESSION

#3) FOR #1 & #2) TO RUN CONSECUTIVELY TO EACH OTHER, TOTAL OF 4 YRS.

IT IS ALSO A FACT, THAT POSSESSION OF CONTROLLED SUBSTANCE IS A LESSER INCLUDED OFFENSE, OR ELEMENT, OF MAIN CHARGE OF ILLEGAL CONVEYANCE. FINAL FACT IS, UPON

ENTERING OR THROUGHOUT THE STAY AT AUGLAIZE COUNTY JAIL, WAS THE PETITIONER LEGALLY "NOTIFIED" THAT POSSESSION OF A CONTROLLED SUBSTANCE & ENTERING SUCH FACILITY WAS A CRIMINAL OFFENSE, PLEASE SEE BOOKING FILE.

**GROUND FOUR**: RAISE ASSIGNMENT OF ERROR OF "SUPPRESSION OF EXCULPATORY EVIDENCE", I.E., BRADY VIOLATION, BASED ON *BRADY V. MARYLAND* (1963), 373 U.S.83; 10 L.ED 2D 215; 83 S.CT 1194.

SUPPORTING FACTS: ON 10-4-2011 OHIO STATE HIGHWAY PATROL SGT. FRANK F. SIMMONS, JR, CONDUCTED A "FIELD DRUG TEST," IN WHICH PURSUANT TO R.C.4511.19, IT IS A PROCEDURAL & SUBSTANTIVE RIGHT OF CRIMINAL DEFENDANT TO HAVE THE ARRESTING OFFICER TO INCLUDE ALL THE FACTS, INCLUDING FIELD DRUG TEST RESULTS IN THE "SWORN REPORT." BUT BECAUSE RESULTS WERE PRESUMED BY DEFENDANT AS NEGATIVE, AND IS WHY SGT SIMMONS JR. FAILED TO INCLUDE NEGATIVE RESULTS IN SWORN REPORT, BUT ALSO ACTED IN BAD FAITH BY WAY OF, IN A PRETEXT TO AN ILLEGAL ARREST & ILLEGALLY SEIZED PROPERTY OF DEFENDANT CONTRARY TO UNITED STATES CONSTITUTION FOURTH AMENDMENT, BECAUSE PRIOR TO PRE-TRIAL & MOTION TO SUPPRESS EVIDENCE, DEFENSE COUNSEL SUBMITTED A DISCOVERY MOTION, TO NO AVAIL, THEN AT PRE TRIAL ON 11-23-2011 DEFENDANT WAIVED HIS MOTION TO SUPPRESS & OTHER AGREEMENTS, FOR A GUILTY PLEA, NOT KNOWING THAT PROSECUTION WITHHELD THIS EXCULPATORY EVIDENCE. THEN ON 2-24-2012 DEFENDANT APPELLANT IN PROPRIA PERSONA FILED A MOTION FOR EXCULPATORY EVIDENCE, SPECIFICALLY FOR THE "FIELD DRUG TEST" ALL STATE COURTS IGNORED DEFENDANT IN PROPRIA PERSONA PLEADINGS REQUESTING THIS EXCULPATORY EVIDENCE. REGARDLESS BOTH ARRESTING OFFICER & PROSECUTION ACTED IN BAD FAITH, OFFICER BY WAY OF NO POSITIVE FIELD TEST FOR ARREST, ETC. …. PROSECUTION BY WAY AT PLEA NEGOTIATION, IN WHERE IF THE DEFENDANT KNEW THIS EVIDENCE (FIELD DRUG TEST WAS NEGATIVE) WOULD OF BOLSTERED DEFENDANT MOTION TO SUPPRESS, ILLEGAL SEARCH & SEIZURE CLAIM.

Petitioner did not raise the issues presented in Grounds Two through Four before the Ohio Court of Appeals in his direct appeal.  Because the claims were not raised on direct appeal, they would be barred by the Ohio rule of *res judicata*.  *Lott v. Coyle*, 261 F.3d 594, 611-612 (6th Cir.2001), cert. denied, 534 U.S. 1147, 122 S.Ct. 1106, 151 L.Ed.2d 1001 (2002); *Rust*, 17 F.3d at 160-161; *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996) (syllabus); *State v. Perry*, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 105-106 (1967) (syllabus, ¶ 9). *Res judicata* would bar

Petitioner from litigating an issue that could have been raised on direct appeal. *Perry*, 10 Ohio St.2d at 180, 226 N.E.2d at 108.

The Ohio rule of *res judicata* satisfies the first three factors in *Maupin*. See *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001). The fourth factor is that the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. "Cause" for a procedural default is ordinarily shown by "some objective factor external to the defense" which impeded the petitioner's efforts to comply with the state's procedural rule. *Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).

Because Petitioner has not shown cause, it is unnecessary to consider the issue of prejudice. *Murray*, 477 U.S. at 494; *Shabazz v. Ohio*, 149 F.3d 1184, 1998 WL 384559, at *1 (6th Cir. June 18, 1998). The undersigned recommends that the Court find that the issues presented in Grounds Two through Four have been procedurally defaulted.

Furthermore, although Petitioner argued ineffective assistance of appellate counsel in his *Murnahan* application before the Third District Court of Appeals and the Ohio Supreme Court (in his direct appeal), based upon the issues raised in Grounds Two through Four, the Sixth Circuit has held that a *Murnahan* application "cannot function to preserve the underlying substantive claim" for habeas review. *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir.2008) (internal quotation marks omitted); see also *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir.2012); *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir.2005). *Murnahan* proceedings permit criminal defendants to apply to reopen their appeals "based on a claim of ineffective assistance of appellate counsel." Ohio R.App. P. 26(B); see also Ohio Sup.Ct. Prac. R. 11.06. In his or her application, the defendant must identify "[o]ne or more assignments of error ... that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation." Ohio R.App. P. 26(B)(2)(c). The application will be granted if the court finds a "genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." Ohio R.App. P. 26(B)(5).

-20-

Once an application has been granted, the court will vacate its prior judgment and issue a new judgment if it concludes that counsel's performance was deficient and prejudiced the defendant. Ohio R.App. P. 26(B)(5) & (9). Thus, by the text of the Ohio rules, *Murnahan* proceedings allow defendants to re-open their appeals and raise new substantive claims only if their failure to raise these claims in the first instance was due to ineffective assistance of their appellate counsel. See *Wogenstahl*, 668 F.3d at 338. The Supreme Court of Ohio denied Petitioner's application to re-open his appeal finding that Petitioner had not made a threshold showing of ineffective assistance.

Finally, a claim of "actual innocence" is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits. *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

A fundamental miscarriage of justice results when one who is "actually" innocent is convicted. *Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir.2011). "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted). "Actual innocence means factual innocence, not merely legal insufficiency. *Luster v. United States*, 168 F.3d 913, 915 (6th Cir.1999).  Here, Petitioner has not asserted that he is actually innocent of the crimes for which he was convicted.

Petitioner did not fairly present his ineffective assistance of trial counsel claims raised in Grounds Two through Four to the state appellate court, nor did he preserve the claims through his *Murnahan* application. As a consequence, the undersigned recommends that the trial court find that Petitioner has procedurally defaulted his claims in Grounds Two through Four.

**B.**     **Ground One**

DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF APPEAL COUNSEL ON DIRECT APPEAL CONTRARY TO *STRICKLAND V. WASHINGTON* (1984), 466 U.S.668; 104 S.CT 2052; 80 L.ED 2D 674; WHEN COUNSEL FAILED TO DO THE FOLLOWING;

#1) RAISE ASSIGNMENT OF ERROR OF "INCOMPETENCE CLAIM," BASED ON" AMERICAN DISABILITY ACT OF 1990 (A.D.A) *PATE V. ROBINSON* (1966), 383 U.S.375; 15 L.ED 815; 86

-21-

S.CT 836: *DROPE V. MISSOURI* (1975) 420 U.S.162; 43 L.ED 2D 103; 95 S.CT 896.

#2) RAISE ASSIGNMENT OF ERROR OF "ALLIED OFFENSE" & OR THE "DOUBLE JEOPARDY" CLAIM, BASED ON R.C.2941.25(A): UNITED STATES CONSTITUTION FIFTH AMENDMENT, CITING *BLOCKBURGER V. UNITED STATES* (1932), 284 U.S.299; 52 S.CT 180; 76 L.ED 306

#3) RAISE ASSIGNMENT OF ERROR OF "SUPPRESSION OF EXCULPATORY EVIDENCE", I.E., *BRADY* VIOLATION, BASED ON *BRADY V. MARYLAND* (1963), 373 U.S. 83; 10 L.ED 2D 215; 83 S.CT 1194.

DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF APPEAL COUNSEL ON DIRECT APPEAL CONTRARY TO *STRICKLAND V. WASHINGTON* (L984) 466 U.S.668, 104 S.CT 2052, 80 L.ED 2D 674.

Respondent contends that Petitioner has procedurally defaulted his constitutional claims predicated upon ineffective assistance of appellate counsel because he did not appeal the denial of his *Murnahan* application by the Third District Court of Appeals to the Ohio Supreme Court. However, Petitioner did assert claims for ineffective assistance of appellate counsel in his direct appeal to the Ohio Supreme Court.

There are two independent avenues an appellant can use to raise a claim of ineffective assistance of appellate counsel in Ohio. The Ohio Supreme Court's decision in *State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204, syllabus, ¶ 2, 63 Ohio St.3d 60, 584 N.E.2d 1204, 1205 (1992) has been interpreted by Ohio courts as permitting review of ineffective assistance of appellate counsel claims either in a Rule 26(B) application for reopening of appeal or in a direct appeal to the Ohio Supreme Court. In *State v. Davis*, 119 Ohio St.3d 422, 894 N.E.2d 1221 (2008), the Ohio Supreme Court held that *res judicata* does not bar consideration of a claim of ineffective assistance of appellate counsel in Rule 26(B) proceedings, where the claim also was raised, but not addressed on the merits, on direct appeal to the Ohio Supreme Court. In so ruling, the Ohio Supreme Court implicitly recognized that two avenues of relief remain available in Ohio for a defendant to seek review of ineffective assistance of appellate counsel claims.

Here, Petitioner utilized both avenues to raise his ineffective assistance of appellate counsel claims. As correctly argued by Respondent, Petitioner has procedurally defaulted the claims he raised

in his Rule 26(B) application because he did not pursue an appeal from the denial of the Rule 26(B) application to the Ohio Supreme Court.  However, Petitioner presented all of the claims in Ground One in his timely direct appeal to the Ohio Supreme Court.  He has exhausted his state court remedies with regard to those claims. Accordingly, the ineffective assistance of appellate counsel claims in Ground One are not defaulted. See, *e.g.*, *Bennett v. Warden, Leb. Corr. Inst.*, Case No. 1:09CV622, 2010 U.S. Dist. LEXIS 142058, at *59 (S.D.Ohio Nov. 12, 2010).

Claims of ineffective assistance of appellate counsel are governed by the same two-prong standard of *Strickland*. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004). In the appellate context, the court must first assess the claims that appellate counsel failed to raise. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir.2008). Second, "[c]ounsel's failure to raise an issue on appeal could only be ineffective assistance of counsel if there is reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland*, 356 F.3d at 699.

In his traverse, captioned "Response to Respondent's Answer/Return of Writ," Petitioner advances several arguments to demonstrate that he has not procedurally defaulted his claims. However, Petitioner advances no argument in his traverse in support of his ineffective assistance of counsel claims.  To the contrary, the argument in his traverse solely addresses Respondent's assertions regarding procedural default.

### 1.  Lack of Competence to Enter Guilty Plea

Because a guilty plea "involves a waiver of many substantial constitutional rights," *Fautenberry v. Mitchell*, 515 F.3d 614, 636 (6th Cir.2008), it must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). The defendant must appreciate the consequences of his waiver of constitutional rights, waive his rights without being coerced to do so, and understand the rights that he is surrendering by pleading guilty. *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir.2009). "[T]he defendant must [also] be aware of the maximum sentence that could be imposed." *King v. Dutton*, 17 F.3d 151, 154 (6th Cir.1994).

-23-

"[A] plea that is not voluntary is undoubtedly an impairment of a defendant's substantial rights." *United States v. Martin*, 668 F.3d 787, 792 (6th Cir.2012). The Constitution, however, "does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 630, 122 S.Ct. 2450, 2456, 153 L.Ed.2d 586 (2002). Courts must consider all the relevant circumstances when determining whether a plea was voluntary. *Brady*, 397 U.S. at 749, 90 S.Ct. at 1469.

The Third District's opinion, which concludes that Petitioner's motion to withdraw his guilty plea should be denied, provides considerable insight into appellate counsel's failure to raise the competency issue on direct appeal:

{¶ 19} Prince claims that the trial court abused its discretion by denying his presentence motion to withdraw his guilty plea because a presentence motion to withdraw a guilty plea should be liberally and freely granted. Prince contends that he demonstrated a reasonable and legitimate basis for the withdrawal, asserting that he was not of clear mind when he made the plea because he did not have his medication. He also claims that he did not understand at the time he entered his plea that the maximum sentence for an F-3 was 36 months.

{¶ 20} Crim.R. 32.1 states that: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Although the rule does not articulate a standard to be used when considering a presentence motion, it has long been held that a presentence motion to withdraw a guilty plea "should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992). However, this does not mean that a motion to withdraw a guilty plea will be granted automatically. *State v. Drake*, 73 Ohio App.3d 640, 645, 598 N.E.2d 115 (8th Dist.1991). "A defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawal of the plea." State v. Xie, at paragraph one of the syllabus.

{¶ 21} It is within the sound discretion of the trial court to determine whether there is a legitimate and reasonable basis for withdrawal of a guilty plea and, absent an abuse of discretion, the trial court's decision on the matter must be affirmed. Id. at 527, 584 N.E.2d 715. The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). It involves views or actions "that no conscientious judge, acting intelligently, could honestly have taken." (Internal citations omitted.) *State v. Hancock*, 108 Ohio St.3d 57, 840 N.E.2d 1032, 2006-Ohio-160, ¶ 129-130.

{¶ 22} Appellate courts often consider the following factors when reviewing a trial court's decision concerning a presentence motion to withdraw a guilty plea: 1) whether the State will be prejudiced by withdrawal; 2) the representation afforded to the defendant by counsel; 3) the extent of the Crim.R.11 plea hearing; 4) the extent

-24-

of the hearing on the motion to withdraw; 5) whether the trial court gave full and fair consideration to the motion; 6) whether the timing of the motion was reasonable; 7) the reasons for the motion; 8) whether the defendant understood the nature of the charges and potential sentences; and 9) whether the accused was perhaps not guilty or had a complete defense to the charge. *State v. Fish*, 104 Ohio App.3d 236, 240, 661 N.E.2d 788 (1st.Dist.1995); *State v. Lefler*, 3d Dist. No. 6-07-22, 2008-Ohio-3057, ¶ 11. A trial court does not abuse its discretion in overruling a motion to withdraw a guilty plea where the accused is represented by highly competent counsel; where the accused was afforded a full hearing pursuant to Crim.R. 11 before he entered the plea; when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion; and where the record reveals the court gave full and fair consideration to the plea withdrawal request. *State v. Staton*, 3d Dist No. 4-11-06, 2011-Ohio-4889, ¶ 4, quoting *State v. Sylvester*, 2d Dist. No. 22289, 2008–Ohio–2901, ¶ 19. A change of heart is not sufficient grounds to allow the withdrawal of the guilty plea, even in a presentence motion to withdraw the plea. *Sylvester* at ¶ 4; *State v. Lambros*, 44 Ohio App.3d 102, 541 N.E.2d 632 (8th Dist.1988). "A change of heart or mistaken belief about the plea is not a reasonable basis requiring a trial court to permit the defendant to withdraw the plea." *State v. Hoke*, 4th Dist. No. 10CA32, 2011-Ohio-1221, ¶ 13.

{¶ 23} The record demonstrates that Prince was afforded a full hearing, pursuant to Crim.R. 11, before he entered his guilty plea. The transcript of the plea hearing reveals that the trial court explained the aspects of the plea to him, and that Prince was cognizant of the consequences of entering the guilty plea. Prince was represented by competent counsel. Although Prince chose not to follow counsel's recommendation that Prince delay entering his plea, the record shows that Prince had chosen to by-pass working with counsel, make his own decisions, and file his own motions through the entire proceedings in this case. At the plea hearing, the trial court addressed Prince personally and reviewed the plea agreement with Prince, addressing the nature of the charge against him, the maximum penalty involved, the effect of a guilty plea, and Prince's constitutional rights. After questioning Prince, the trial court determined that Prince was making the plea voluntarily, with an understanding and waiver of his rights, an understanding of the nature of the charge against him, and an understanding of the consequences of his guilty plea. Based on the record, Prince was afforded a full hearing with a thorough explanation of all aspects in making his plea, pursuant to Crim.R. 11, before he entered his guilty plea. There was nothing in the record to indicate that Prince was not thinking clearly or that he did not comprehend what he was doing.

{¶ 24} The record further demonstrates that Prince was given a full, impartial hearing on his motion to withdraw his guilty plea. However, after consideration of all of the evidence and testimony, the trial court concluded that Prince had merely changed his mind.

{¶ 25} In support of his position, Prince cites to a Seventh District Court of Appeals decision in which the appellate court reversed the trial court's denial of the defendant's motion to withdraw his presentence guilty plea, claiming that the facts in that case are similar to the facts in Prince's case. See *State v. Cuthbertson*, 139 Ohio App.3d 895, 746 N.E.2d 197, 2000-Ohio-2638 (7th Dist.) However, we find that the decision in *Cuthbertson* is distinguishable in several important aspects. In addition to the defendant admitting that he "changed his mind," he also claimed that he was coerced into making his plea and he claimed that he was innocent. Id. at 899, 746 N.E.2d 197. The defendant set forth the possibility of a defense to the charge by maintaining his claims that he was not the perpetrator of the murder. Id. The court of appeals held that "when a defendant claims he is innocent and wishes to withdraw his

-25-

plea of guilt prior to sentencing, a comparison of the interests and potential prejudice to the respective parties weigh heavily in the interests of the accused." *Id.* at 899-900, 746 N.E.2d 197.

{¶ 26} In Prince's case, there was no claim that he was not actually guilty of the charges. Prince essentially acknowledged that he changed his mind about his plea when he claimed he later discovered that he did not receive as good of a deal as he thought he had at the time of the plea. However, the record shows that both the State and the trial court meticulously explained the correct penalties that were involved and gave Prince every opportunity to request clarification or further information.

{¶ 27} Prince also claims that he was not able to think clearly because of a lack of proper medication for his psychological conditions. However, there was no evidence in the record to support Prince's claims. The medical personnel at the jail had attempted to obtain more information concerning his claims but did not receive any response to their inquiries. Furthermore, Prince's communications with the court and jail personnel and his behavior in front of the court on several occasions did not appear to indicate that he was suffering from any impairment. The trial court is in the better position to evaluate both the motivation of the defendant in pleading guilty and the credibility and weight to be given to the reasons for seeking to withdraw the plea. *State v. Kutnyak*, 6th Dist. No. WD–11–038, 2012-Ohio-3410, ¶ 5. When applying an abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *State v. Castillo*, 3d Dist. No. 14–10–36, 2011-Ohio-3131, ¶ 17.

{¶ 28} Based on all of the above, we do not find that the trial court abused its discretion when it denied Prince's motion to withdraw his guilty plea. Prince's assignment of error is overruled.

{¶ 29} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

2012 WL 3893768.

Petitioner contends that he was not given his required medication and, as a consequence, his guilty plea was involuntary. However, there are several indications that the guilty plea was voluntary and intelligent. For example, the trial court informed Petitioner of the rights that he was waiving by pleading guilty and the maximum sentence that he could receive if he pleaded guilty. Petitioner, stated that the only medication he was prescribed was for pain, that the pain he suffered did not impact his ability to make rational judgments, and that it was his choice to plead guilty. These "[s]olemn declarations in open court carry a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977), particularly here, where Petitioner has a record of numerous felony convictions, see ECF Dkt. #9-4, p. 22, and is no stranger to the criminal court process. Also, Petitioner, both before and after he entered his guilty plea, submitted *pro se* briefs that indicated he was capable of understanding the court proceedings. Moreover, Petitioner's

-26-

argument at the hearing on the motion to withdraw plea centered on his misunderstanding of the extent that the plea deal would result in a reduced sentence, not in any inability to understand the proceedings or appreciate the consequences of his actions brought on by mental illness.

Because the Third District Court of Appeals essentially reached the same conclusion, that is, that Petitioner's guilty plea was freely and voluntarily entered, the undersigned recommends that the Court find that the incompetence claim that appellate counsel failed to advance on appeal did not have merit, and, as a consequence, that inclusion of the claim would not have changed the result of the appeal. See *McFarland*, 356 F.3d at 699.  Accordingly, the undersigned recommends that the Court find that the first argument asserted in Ground One does not have merit.

## 2.  **Double Jeopardy**

Next, Petitioner contends that his sentences for the first charge in the Indictment and sole charge in the information should have merged at sentencing.  The Double Jeopardy Clauses of the United States Constitution and Article I, Section 10, of the Ohio Constitution prohibit multiple punishments for the same offense.  *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23. Accordingly, R.C. 2941.25(A) provides that when a defendant's conduct results in the commission of two or more allied offenses of similar import, that conduct can be charged separately, but the defendant can be convicted and sentenced for only one offense. R.C. 2941.25(A).

In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court held that "when determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id.* at syllabus. The question is whether it is possible to commit one offense and commit the other with the same conduct. If the offenses correspond to such a degree that the conduct of the defendant can constitute the commission of both of the offenses, then the offenses are of similar import. *Id.* at ¶48.

If the offenses are of similar import, the court must then determine if they were in fact committed by the same conduct – a single act, committed with a single state of mind. *Id.* at ¶49. Conversely, if the commission of one offense could not result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.  *Id.*

As previously stated, Petitioner has offered no argument in support of this claim.  At the plea hearing the trial court inquired whether the drugs charged in the Bill of Information were the same drugs that were charged in the Indictment.  The state explained that "one would be the drugs he had in the vehicle when he was arrested and the conveyance of drugs he had taken with him into the correctional facility."  ECF Dkt. #9-3, p. 13.  The trial court inquired further, "So they are not the same drugs and , therefore, do not merge."  *Id.*  The state responded, "Same type but different." *Id.* The trial court inquired a third time, "But different drugs, therefore, they do not merge."  *Id.* Petitioner's counsel responded, "Yeah."  *Id.*

Based upon the trial court record, there is no indication that the two convictions at issue should have merged at sentencing. Accordingly, the undersigned recommends that the Court find that the "allied offenses" claim that appellate counsel failed to advance on appeal did not have merit, and, as a consequence, that inclusion of the claim would not have changed the result of the appeal. See *McFarland*, 356 F.3d at 699.  Accordingly, the undersigned recommends that the Court find that the second argument asserted in Ground One does not have merit.

### C.     *Brady* violation

Finally, Petitioner contends that the state suppressed exculpatory evidence in violation of the rule announced in  *Brady v. Maryland*, 373 U.S. 83 (1963).  Petitioner requests discovery, specifically the results of the drug field test or Petitioner's consent to the drug field test, which ultimately led to the charges in the Indictment, in order to establish his final claim in Ground One.

The State has a constitutional obligation to furnish an accused with exculpatory evidence pertaining to the accused's guilt or innocence or to the potential punishment. *Brady v. Maryland*, 373 U.S. at 87-88. The *Brady* doctrine encompasses impeachment material. *Giglio v. United States*, 405 U.S. 150, 153–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). For a *Brady* claim, Petitioner must make some showing that proves that the state suppressed evidence. *United States v. Warshak*, 631 F.3d 266, 300 (6th Cir.2010).

Petitioner must prove "(1) that the evidence was favorable to him, (2) that it was suppressed (whether intentionally or not) by the government, and (3) that prejudice ensued." *Jamison v. Collins*,

291 F.3d 380, 385 (6th Cir.2002). As to the merits of this *Brady* claim, the Sixth Circuit reiterated the evidentiary requirements to obtain any habeas relief:

> *Brady* requires the prosecution to disclose exculpatory and impeachment evidence that is material either to guilt or to punishment. The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A *Brady* violation has three elements: (1) the evidence must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued.

*Jalowiec v. Bradshaw*, 657 F.3d 293, 302–03 (6th Cir.2011) (quoting *Beuke v. Houk*, 537 F.3d 618, 633 (6th Cir.2008) (internal quotation marks and citations omitted)). Yet, "*Brady* does not apply when the defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information.' " *Owens v. Guida*, 549 F.3d 399, 417 (6th Cir.2008) (quoting *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir.1998)).

In light of the focus on the effects of suppressing evidence on the truth-finding function of the jury at trial, several courts have held that the failure to disclose exculpatory information prior to the taking of a plea does not render the plea involuntary or constitute a *Brady* violation. The reasoning of this rule was explained by the Fifth Circuit: "Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to a trial is not a constitutional violation." *Matthew v. Johnson*, 201 F.3d 353, 361-62 (5th Cir.2000).

In *Campbell v. Marshall*, 769 F.2d 314, 324 (6th Cir.1985), the Sixth Circuit held that the state's failure to disclose potentially exculpatory evidence in its possession did not render involuntary an otherwise voluntary, counseled plea of guilty since belated discovery of information did not in any way detract from credible factual basis for petitioner's plea admitted in his own statements at plea proceeding. Similarly, in *United States v. Ruiz,* 536 U.S. 622, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002), the Supreme Court held that a plea is not rendered invalid by the prosecutor's failure to disclose exculpatory impeachment information prior to the entry of the plea. *Id.* at 628-33. While the Court expressly declined to consider whether this rule also applied to exculpatory substantive evidence, the Court's reasoning focused on the *Brady* rule's connection to the truth-finding function

-29-

at trial, suggesting that the holding in *Ruiz* extends to exculpatory substantive evidence as well. Indeed, at some point the Court did not distinguish between the two types of exculpatory evidence, going so far as to note that "due process considerations, the very same considerations that led this Court to find trial related rights to exculpatory and impeachment information in *Brady* and *Giglio*, argue against the existence of the 'right' " to pre-plea disclosure. *Ruiz*, 536 U.S. at 631.

Here, the Third District Court of Appeals recognized that Petitioner admitted to the ownership of the heroin and the drug paraphernalia.  The Third District wrote, "Upon searching the vehicle, the officers located heroin, a syringe, and a cup of water that had been used to clean the syringe. Prince admitted that these items belonged to him."  2012 WL 3893768, *1. Even assuming arguendo that petitioner could assert a *Brady* violation, "*Brady* does not apply when the defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information.' " *Owens v. Guida*, supra, at 417. Petitioner should have been aware of whether the drug in his possession was, in fact, heroin.

As a consequence, the undersigned recommends that the Court find that the *Brady* claim that appellate counsel failed to advance on appeal did not have merit, and, as a consequence, that inclusion of the claim would not have changed the result of the appeal. See *McFarland*, 356 F.3d at 699.  Accordingly, the undersigned recommends that the Court find that the third argument asserted in Ground One does not have merit, and that no evidentiary hearing is necessary.

## VII.   CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court DISMISS the instant petition in its entirety with prejudice, and DENY Petitioner's motion/request for discovery,

specifically results of drug field test, or Petitioner consent to such field test, ECF Dkt. #12, as MOOT.


DATE: August 15, 2014                                    */s/ George J. Limbert*
                                                        GEORGE J. LIMBERT
                                                        UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).